1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| EVERGREEN INTERNATIONAL AIRLINES, INC., an Oregon corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE BOEING COMPANY, a Delaware Corporation,<br>Defendant. | Case No.<br><br>COMPLAINT |

Plaintiff Evergreen International Airlines, Inc. ("Evergreen"), for its Complaint against

defendant The Boeing Company ("Boeing"), alleges as follows:

## SUMMARY OF ACTION

1.       Evergreen alleges that Boeing committed bad faith and breached its contractual

promises to conduct its business fairly, impartially, and in an ethical and proper manner when it

wrongfully cancelled its long-term "Large Cargo Freighter" contract with Evergreen and entered

into a secret replacement deal with Atlas Air, Inc., for the purpose of offsetting Boeing's nearly

billion-dollar liability to Atlas resulting from delays on the Boeing 747-8 program.  Boeing's bad

faith and breach of contract have caused lost profits to Evergreen in excess of $175 million.

COMPLAINT- 1

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

2.      The December 14, 2005, Large Cargo Freighter Contract (the "LCF Contract") called for Evergreen – over an extended 20-year period – to operate, maintain, and provide ground handling for the specially modified Large Cargo Freighter plane (the "LCF") that is a critical component of the supply chain on Boeing's 787 "Dreamliner" airplane program.

3.      Since then, Evergreen has provided Boeing with exemplary service and performance for which Boeing has publicly and privately praised Evergreen.  Moreover, Evergreen treated Boeing as the teammate it promised it would be, even when doing so was to Evergreen's disadvantage.  Boeing has suffered innumerable setbacks in attempting to deliver the Dreamliner to its customers.  All the while, Evergreen stood by Boeing, sacrificing its own immediate profit for the overall success of the program.  Evergreen has developed a robust, reliable, global logistics system that is integral to the success of the Dreamliner program and had every reason to believe that short-term sacrifice and collaboration with Boeing would be returned by a long-term and mutually beneficial relationship.

4.      Despite Evergreen's commitment to the program, Boeing felt no such loyalty to Evergreen nor to its contractual promises when confronted by Atlas's 747-8 refund claim.  Beginning in the fall of 2009, Boeing secretly negotiated with Atlas to trade the Evergreen LCF Contract for Boeing's enormous exposure to Atlas's refund claim based on late delivery of the 747-8 freighter airplane.  At the same time, Boeing lied to Evergreen, asserting that it was merely conducting a review that was "standard procedure," and rebuffed Evergreen offers to engage in a good faith appraisal of both parties' performance of the LCF Contract.  Instead, in violation of its legally implied duties of good faith and fair dealing and express contractual promises of fairness and impartiality, and without any legitimate basis or cause for cancelling the

COMPLAINT- 2

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

LCF Contract, Boeing dropped Evergreen in favor of Atlas to avert the multimillion dollar disaster that was looming over the 747-8 program.

5.     Boeing further breached its contractual duties by misleading Evergreen into giving Boeing confidential and proprietary internal reports – under the guise of "budget forecasting" – which Boeing instead gave to Atlas in violation of Boeing's express confidentiality obligations under the LCF Contract.  After entering its new deal with Atlas, Boeing has since demanded that Evergreen help transfer the LCF program to Atlas even though Boeing has admitted that the LCF Contract imposes no such obligation on Evergreen.  And, despite its blatant breach of the confidentiality provision of the LCF Contract and its pervasive bad faith, Boeing has demanded that Evergreen provide Boeing and Atlas with an enormous volume of highly confidential, proprietary, and trade secret information, a demand to which no reasonable company would capitulate.

6.     As alleged below, neither the express terms of the LCF Contract nor the duties of good faith and fair dealing permit such bad faith conduct by Boeing.  Boeing has jettisoned its teammate and placed in jeopardy the operation of the LCF program and success of the Dreamliner program all in exchange for a sweetheart deal with Atlas.  As a consequence, Boeing is liable to Evergreen for at least $175 million, representing Evergreen's lost profits over what would have been the remaining life of the LCF Contract.

## JURISDICTION

7.     Subject matter jurisdiction of this Court is based on 28 U.S.C. § 1332, in that the action is between a citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.  All parties have consented in writing to personal jurisdiction in the United States District Court for the Western District of Washington.

COMPLAINT- 3

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

**VENUE**

8.      Venue is proper in this Court under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this controversy occurred within the Western District of Washington and the parties have consented to suit here.

**THE PARTIES**

9.      Plaintiff Evergreen is, and at all relevant times mentioned herein has been, a corporation duly organized and existing under the laws of the State of Oregon with its principal place of business in McMinnville, Oregon.

10.      Defendant Boeing is, and at all relevant times mentioned herein has been, a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

**GENERAL ALLEGATIONS**

A.      **The Boeing 787 Dreamliner Program**

11.      In or about 2003, Boeing announced a new jetliner program called the 787 or Dreamliner.  Instead of building the aircraft from the ground up at a single location as had been Boeing's general practice in the past, Boeing assigned subcontractors to perform much of the assembly and then transported the completed subassemblies to Boeing's factory in Everett, Washington for final assembly.  Major subassemblies of the 787 are manufactured in Japan, Italy, Charleston, South Carolina, and Wichita, Kansas.

12.      In order to transport the subassemblies, Boeing converted four used passenger Boeing 747-400 airplanes into an outsize configuration and named the plane the Large Cargo Freighter ("LCF") or the "Dreamlifter."

COMPLAINT- 4

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

13.     Although Boeing owned the LCFs, it did not wish to operate or maintain them nor be responsible for the ground-handling associated with the program.  Accordingly, Boeing solicited bids from interested companies to provide these LCF services on Boeing's behalf.  Boeing described the bidding process as a "best value" competition.  In addition to Evergreen, other air freight companies competed for the LCF award, including Atlas Air.

**B.     The Evergreen LCF Contract With Boeing**

14.     Evergreen provides a full range of flight operations under 14 CFR Part 121 FAA regulatory guidance, full "line" aircraft maintenance, heavy maintenance inspection service, and full ground handling.  Among other things, Evergreen operates a fleet of Boeing 747 cargo planes for commercial and governmental customers around the globe.

15.     On September 23, 2005, Boeing informed Evergreen that it had "been selected for award" of the LCF Operator Service Contract and that Boeing looked "forward to a long term working together relationship with the LCF and 787 Program."

16.     On December 14, 2005, Evergreen and Boeing entered into the "Large Cargo Freighter Operator Service Agreement" (the "LCF Contract").  Pursuant to the LCF Contract, Boeing contracted to obtain from Evergreen "comprehensive transportation and support services related to transportation via the Large Cargo Freighter ('LCF') of 787 Cargo from various Boeing Supplier locations around the world to Boeing and Boeing Supplier locations in support of the 787 Program."

17.     Evergreen agreed to "operate and maintain [the LCFs] and equipment and arrange for all necessary support facilities, including but not limited to security, storage and fueling arrangements."

COMPLAINT- 5

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

18.     In carrying out the LCF Contract, Evergreen devoted substantial time, effort, and money to develop the program, including training, maintenance, and operations of highly-specialized Aircraft Tail Support and 787 component transporting and loading equipment. Throughout the formative stages of preparation to operate, all facets of Evergreen's parent company, Evergreen International Aviation, Inc., were relied upon to assist with development of the aircraft, the specialized equipment, and the project management planning and development to cooperatively develop what resulted in an unparalleled global logistics system.

19.     Evergreen reasonably expected that, in the absence of bad faith by Boeing, or cause or default by Evergreen, the LCF Contract would continue for 20 years.  "The period of performance under this Contract may continue through **an extended period of twenty (20) years** or the life of the 787 Program, whichever is shorter, and is subject to the completion of an Initial Term and the exercise of up to three (3) consecutive five (5) year options to renew as indicated below."  (Emphasis added.)

20.     The LCF Contract provided that, after an initial five-year term, it "will **automatically** renew for an additional five (5) years," (emphasis added), unless it was (i) terminated early based on breach or default by Evergreen, "convenience," damage to the LCF fleet, termination of the 787 program, or force majeure.

21.     Boeing did not invoke early termination, cause, default, or convenience as the basis for not renewing the LCF Contract.  After first informing Evergreen that the contract was under review as "standard procedure," and informing Evergreen executives that Evergreen should not be alarmed by this process, Evergreen received notification that Boeing was "investigating other options" in "light of current business realities." Within two months of these communications, and with no cooperative engagement with Evergreen to discuss the process,

COMPLAINT- 6

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

Boeing abruptly notified Evergreen that it was cancelling the LCF Contract at the end of the initial term.

22.     While the LCF Contract provided that either party could cancel the contract, the right was subject to both an express and implied covenant of good faith and fair dealing.  Of course, in every contract there is an implied covenant of good faith and fair dealing which obligates each party to cooperate with the other so that each may obtain the full benefit of performance.  In addition to this implied covenant, pursuant to the express terms of the LCF Contract, Boeing committed itself to "conducting its business fairly, impartially, and in an ethical and proper manner."  The Contract also specifically included reference to Boeing's Code of Conduct which states, in pertinent part:

> Boeing will conduct its business fairly, impartially, in an ethical and proper manner, and in full compliance with all applicable laws and regulations. In conducting its business, integrity must underlie all company relationships, including those with customers, suppliers, communities and among employees. The highest standards of ethical business conduct are required of Boeing employees in the performance of their company responsibilities. Employees will not engage in conduct or activity that may raise questions as to the company's honesty, impartiality, reputation or otherwise cause embarrassment to the company.

In addition, the Boeing Code of Conduct states that its employees will "ensure" that, among other things, "they observe that **fair dealing is the foundation for all of our transactions and interactions**."  (Emphasis added.)

COMPLAINT- 7

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

23.     Accordingly, based on the express language of the contract, Evergreen reasonably expected that, absent bad faith conduct on Boeing's part or cause or default by Evergreen, the LCF Contract would last 20 years based upon "automatic," five-year, renewals of the LCF Contract.

24.     As alleged below, Boeing did not act in good faith, but, instead, breached its contractual obligation of good faith and the implied duty of good faith and fair dealing by acting unfairly, without impartiality, and in an unethical and improper manner by cancelling the LCF Contract and transferring the benefits of the contract to Atlas in order to reduce Boeing's multi-million dollar liability to Atlas on an unrelated contract between Boeing and Atlas.

**C.    Evergreen's Performance Of The LCF Contract**

25.     At the time that the parties entered into the LCF Contract, the 787 was still on the drawing board.  The start of major assembly of the first 787 was not officially announced until June 30, 2006.  On January 12, 2007, the first major assemblies, forward fuselage, center wing, and center wheel well were shipped on the Dreamlifters from Japan to South Carolina.  By June 26, 2007, the major assembly of the first 787 was completed.

26.     Boeing had originally planned for a first flight of the 787 by the end of August 2007, but beginning on September 5, 2007, Boeing announced a multitude of delays:

- September 5, 2007:  Boeing announced a three-month delay

- October 10, 2007:  Boeing announced a second three-month delay to the first flight and a six-month delay to first deliveries.

- January 16, 2008:  Boeing announced a third three-month delay to the first flight of the 787.

- April 9, 2008:  Boeing announced a fourth delay, shifting the maiden flight

COMPLAINT- 8

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

to the fourth quarter of 2008.

- The program was further delayed by a Boeing machinists strike during September and October 2008.

- November 4, 2008:  Boeing announced another delay, stating that the first test flight would not be accomplished in the fourth quarter of 2008.

- December 11, 2008:  Boeing announced that the first flight would be delayed until the second quarter of 2009.

- June 15, 2009:  Boeing announced that the 787 would make its first flight within two weeks. However, on June 23, 2009, Boeing issued a press release stating that the first flight was postponed "due to a need to reinforce an area within the side-of-body section of the aircraft."

- August 27, 2009:  Boeing announced that it planned for the first flight to occur by the end of 2009 and deliveries to begin at the end of 2010.

27.   It was not until December 15, 2009, that Boeing conducted the 787's maiden flight, more than two years late.

28.   Boeing's delays in the 787 program deprived Evergreen of expected revenue and profit under the LCF Contract.  For example, Boeing presented Evergreen with several plans, called "Z-Plans," forecasting production rates, none of which ever came to fruition, but which nonetheless were the baseline for Evergreen's expenditure of resources to ensure readiness of the system to meet the presented plans. Since Evergreen's contract compensation is based solely on actual aircraft flight hours, Boeing's failure to meet the forecast production flights resulted in Evergreen incurring considerable expense for readiness without ever realizing the return on its investment in the program.  Nevertheless Evergreen continued to honor – and exceed – its contractual obligations and worked with Boeing with the expectation that Evergreen would

COMPLAINT- 9

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

recoup its lost profits in subsequent years as production of the 787 ramped up.  Evergreen's expectation, based on the renewal and good faith obligations of the LCF Contract, was that, absent cause or default on its part – or scrapping of the 787 program entirely – Evergreen would continue to enjoy the benefits of performance under the LCF Contract.

**D.    Atlas And The Boeing 747-8 Freighter**

29.    While Boeing was struggling to design and begin production of the 787, Boeing was having similar problems with an updated version of the 747 jumbo jet.  Boeing was designing a new version of the 747 called the 747-8, including a cargo version called the 747-8 Freighter or 747-8F.

30.     In November 2008, Boeing announced a delay in the delivery of the first 747-8F aircraft from late 2009 to the third quarter of 2010.  In October 2009, Boeing announced a further delay in the first 747-8F delivery to the fourth quarter of 2010 and a general slowdown of the production line for this new aircraft type.  These delays gave rise to customer claims for refunds and lost revenue.

31.    One such customer was Atlas Air.  Atlas, a competitor of Evergreen's, operates a fleet of 26 Boeing 747 freighters comprised of -200 and -400 models.  In September 2006, Atlas Air placed an order with Boeing for twelve 747-8F aircraft.  Atlas also acquired rights to purchase up to an additional fourteen 747-8F aircraft.  Pursuant to its contract with Boeing, Atlas was and is required to pay pre-delivery deposits ("PDP") to Boeing for these aircraft.  According to Atlas's Form 10-K filing with the SEC for the year ending December 31, 2009, as of December 31, 2009, Atlas had remaining commitments of approximately $1.8 billion associated

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

with the 747-8F order (including spare engines, estimated contractual escalations and applying

purchase credits).

32.     However, as a result of the delays in the 747-8F program described above, Boeing

incurred a liability to Atlas.  A Boeing employee informed an Evergreen employee that Boeing's

liability for penalties to Atlas approached $1 billion.  By at least October 2009, Atlas had made a

claim with Boeing for refunds resulting from Boeing's failure to meet delivery guarantees to

Atlas.  On October 23, 2009, Atlas entered into an agreement with Boeing to reschedule the

delivery of three of its 747-8 freighter aircraft (the "Rescheduling Agreement").  As a result of

the Rescheduling Agreement, Atlas's expected expenditures as well as estimated amounts for

contractual price escalations, advance payments (reflecting a revised payment schedule from

Boeing) and required option payments, are $117.9 million in 2010, $848.6 million in 2011,

$558.3 million in 2012 and $204.9 million in 2013.

33.     According to the Atlas 2009 10-K, in November 2009, concurrent with a change

in the 747-8F aircraft delivery schedule, Boeing returned to Atlas $62.9 million representing the

financed portion of the pre-delivery deposits for two of the 747-8F aircraft Atlas ordered.

**E.     Boeing's Bad Faith**

34.     In addition to refunding part of Atlas's deposit as alleged above, Boeing, in bad

faith, agreed with Atlas that Boeing would terminate the LCF Contract with Evergreen and

award it to Atlas as compensation to Atlas for its claims related to the 747-8F program.

35.     In a conference call on November 5, 2009 -- less than two weeks after Boeing and

Atlas executed the Rescheduling Agreement -- Robert Noble, Boeing's Vice President, Supplier

Management, New & Derivatives Programs, Commercial Airplanes, advised Brian Bauer,

Evergreen's President, and James Dineen, Evergreen's Vice President, Special Operations, that

COMPLAINT- 11

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

Boeing was entering into a period of contract review regarding the LCF contract and wanted to allay any fears Evergreen might have about losing the contract as the review "was standard procedure." However, later that same day, Mr. Noble wrote to Evergreen advising that "in light of current business realities, The Boeing Company has decided to investigate other options for the assignment of the next LCF Operator contract which expires on September 30, 2010." The letter was cosigned by Jim Wigfall, Vice President, Boeing Shared Services Group.

36.    On November 13, 2009, Mr. Bauer wrote to Mr. Noble requesting a meeting to resolve any issue or dispute between Boeing and Evergreen regarding renewal of the LCF Contract. Mr. Bauer specified the steps to resolving any such dispute which included holding the proposed meeting, understanding what concerns Boeing had, identifying any areas where Evergreen fell short, addressing any such shortfalls, and a presentation by Evergreen of the challenges and constraints involved in operating the LCF Contract. On January 6, 2010, Mr. Bauer wrote a similar letter to Scott Fancher, Boeing's Vice President and General Manager, 787 Program, Commercial Airplanes. On January 11, 2010, Mr. Bauer wrote a similar letter to Patrick Shanahan, Boeing's Vice President and General Manager, Airplane Programs, Commercial Airplanes.

37.    On January 13, 2010, Evergreen executives, Mr. Bauer, Mr. Dineen, and Ryan Smith, Evergreen's Vice President Finance, met with Boeing executives, Mr. Noble and Gary Blattenbauer, Boeing's Director of Global Logistics, at Boeing's Everett, Washington, facility to seek clarification of Boeing's actions. Although Mr. Noble began the meeting by stating that the contract review was "standard procedure," when pressed for a more specific explanation, Mr. Noble admitted that there was a "carrier with a sizeable assertion against Boeing for lost revenues due to late delivery of the 747-8 aircraft." Mr. Noble added that he was completely

COMPLAINT- 12

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

satisfied with Evergreen's performance, but made it clear that there would be no negotiation between Evergreen and Boeing regarding the LCF Contract because the contract would be offered to "the other carrier" as part of a settlement for the lost revenue claim.  Mr. Noble emphasized that the decision "was not performance-related" and advised Evergreen that "there's nothing you can do about it."  While not specifically identified at the time, the only carrier that fit Mr. Noble's description was Atlas Air.

38.     Consistent with what Mr. Noble had told Evergreen in the January 13, 2010, meeting, Evergreen's performance under the LCF contract was exemplary and Boeing never provided any negative feedback to Evergreen regarding Evergreen's performance or costs.  Since there had never been any complaint with Evergreen's performance, following the November 5, 2009, conference call up until Boeing cancelled the LCF Contract, Evergreen made multiple attempts to understand what concerns Boeing had and to determine if there were any areas where Evergreen could improve.  Evergreen also sought to discuss openly and directly any issues Boeing had with Evergreen before any decision was made on whether to renew the LCF Contract.  These requests were largely rebuffed.  In the only substantive meeting Boeing agreed to have with Evergreen – the January 13, 2010, meeting alleged above – Mr. Noble emphasized that Boeing's motivation was not related to Evergreen's performance of the LCF Contract and that Boeing was completely satisfied with Evergreen's performance.

39.     On February 25, 2010, Evergreen executives held a telephonic conference with Jim Wigfall of Boeing who informed Evergreen that Boeing was cancelling the LCF Contract and entering into a new contract with a then-unnamed carrier.  Mr. Wigfall emphasized that Boeing was not making the change based upon cause, default, or for convenience.  In fact, as all Boeing representatives had done before, Mr. Wigfall emphasized that Evergreen had provided

COMPLAINT- 13

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

exemplary service under the LCF Contract.  Instead, Mr. Wigfall claimed, as a pretext, that Boeing had made the decision based upon "best value," despite never soliciting pricing data, a new bid, or offering Evergreen the opportunity to demonstrate that its service was the "best value."  Of course, the true reason for Boeing making the switch had nothing to do with "best value."  Rather, Boeing did so to extinguish or reduce its nearly billion dollar liability to Atlas.

40.     On March 2, 2010, Dana Moore, Boeing's Procurement Agent, Supplier Management & Procurement – Puget Sound, wrote to Evergreen stating that "Boeing has determined that it will not renew the Contract."  On March 4, 2010, Atlas issued a press release announcing that Boeing had entered into a nine-year contract with Atlas to take over the LCF operations from Evergreen.

41.     The same day that Atlas announced the LCF deal with Boeing, press reports disclosed that Atlas had obtained the contract not as a result of competitive bidding or due to non-performance by Evergreen, but as a quid pro quo for Atlas compromising its claim against Boeing for losses caused by delays in the 747-8F program.  On March 4, 2010, the *Seattle Times* reported that the "One factor [for the switch] may be Atlas' pending order for 12 new 747-8 cargo planes.  [¶]   Because of a severe contraction in the air-cargo market over the last couple of years, Boeing has been negotiating intensely with the initial customers, including Atlas, to reschedule 747-8 deliveries."

42.     On March 6, 2010, the Portland Oregonian reported that Boeing "dropped McMinnville-based Evergreen International as a major contractor in the building of its 787s, opting instead for Atlas Air in New York."  The Oregonian added:  "Dean Tougas, a Boeing spokesman, said Evergreen will complete its five-year contract, which included renewal clauses,

COMPLAINT- 14

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

in September.  'Evergreen has been a good operator,' he said.  'Boeing has been pleased with Evergreen, **but other factors contributed to the decision**.'" (Emphasis added.)

43.    An industry publication, Air Transport Intelligence, reported on March 9, 2010, that, according to "sources close to the agreement," Boeing's decision to cancel the LCF Contract and shift the program to Atlas was "part of a compensation deal in the wake of delays incurred by the airframer's 747-8 programme."  Tellingly, Boeing did not deny the report: "Boeing declines to 'publicly share the ins-and-outs' of the contract, but is not offering an explicit denial that the deal was part of a compensation package related to the 747-8F."

44.    Both publicly and privately, Boeing praised Evergreen's performance of the LCF Contract.  Boeing also publicly admitted that "other factors" were the reason it did not renew the LCF Contract.  Privately, through Mr. Noble, Boeing admitted to Evergreen in the January 13, 2010 meeting with Evergreen that Boeing was terminating the LCF Contract with Evergreen as part of a settlement with a customer – now disclosed as Atlas – for a lost revenue claim.  Such favoritism and improper motive is a breach of the contractual and implied obligations of good faith and is an express violation of Boeing's promise that it "will conduct its business fairly, impartially, in an ethical and proper manner."

45.    Boeing's lack of good faith is further demonstrated by the fact that it was not in Boeing's interest to replace Evergreen with Atlas.  As alleged above, Evergreen's performance of the LCF contract was spotless and on many occasions Evergreen made compromises to help Boeing weather the design and production problems it was having with the 787 program.  Moreover, Evergreen is the only company in the world with any experience operating, maintaining, and performing the ground handling for the unique Dreamlifter airplane.  Having already experienced years of delay, by switching to Atlas, Boeing is jeopardizing the 787

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1
2
3
4
5
6
7
8
9

program – and exposing its shareholders to further costs – by substituting a company that has never operated the Dreamlifter and will have to hire and train pilots, ground crews, and mechanics to take over by October 2010 an operation that has taken more than four years to perfect.  No responsible company would make such a decision unless, by doing so, it eliminated substantial financial liability alleged by a customer.  Boeing's decision, based on that improper motive, is inconsistent with Evergreen's reasonable contractual expectations and violates the contractual and implied duties of good faith and fair dealing.

   **F.     Boeing's Breach Of The Confidentiality Provisions Of The LCF Contract And Extra-Contractual Demand For Transition Assistance From Evergreen**

10
11
12

   46.     The LCF Contract requires Boeing to keep confidential and protect from unauthorized use and disclosure, among other things, all confidential, proprietary and/or trade secret information.

13
14
15
16
17

   47.     On December 18, 2009, Boeing made an unusual request of Evergreen.  Mike Sobotta, Boeing's Senior Manager, Dreamlifter Operations, asked Evergreen to provide engine reports for the 12 engines used on the four Dreamlifter aircraft.  Mr. Sobotta claimed that the engine reports were needed as part of Boeing's "capital budget forecasting exercise for 2010."

18
19
20
21
22
23
24

   48.     These engine reports are generated from a proprietary Evergreen system that predates the LCF contract and is used by Evergreen to monitor engine performance of its entire fleet.   The system, and the reports it generates, reveals how and what Evergreen tracks regarding engine usage and what elements of engine management Evergreen tracks.  Disclosure of this information would give a competitor valuable, confidential information regarding Evergreen's fleet practices.

25
26

COMPLAINT- 16

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

49.     Evergreen has learned that the basis of Boeing's request for the engine reports was a pretext and that the engine reports were given to Atlas without Evergreen's knowledge or consent and in violation of Boeing's confidentiality obligations under the LCF Contract.  On or about March 19, 2010, an Atlas employee, Zachary Kamen, requested that Evergreen provide Atlas with current engine information and status reports.  Mr. Kamen stated that in the past few months, Atlas had received engine reports from Boeing but that Atlas wanted more current reports.  Because Atlas had no right to Evergreen's proprietary data and, more importantly, in light of Boeing having obtained the prior engine reports under false pretenses and having violated the LCF Contract's confidentiality provisions by giving the engine reports to Atlas, Evergreen declined Atlas's request.  Moreover, disclosing such information to Evergreen's competitor, Atlas, would be particularly harmful to Evergreen because Atlas's fleet does not employ the Pratt & Whitney engines that are tracked in the Evergreen system and are used on the LCFs.

50.     Following notice to Evergreen that it was terminating the LCF Contract, Boeing has made multiple demands on Evergreen that Evergreen turn over enormous quantities of documents, data, and equipment pertaining to Evergreen's operation, maintenance, and ground handling of the LCF program.  For example, on March 10, 2010, Dana Moore, of Boeing's Shared Services Group Puget Sound Supplier Management, requested voluminous documents which Ms. Moore said would be "provided to Atlas" "as we start planning the transition."  On March 11, 2010, Ms. Moore made additional demands for documents that "Atlas would like."

51.     Most, if not all of the materials Boeing has sought from Evergreen consist either partially or entirely of Evergreen's trade secrets and proprietary information developed at great expense by Evergreen.

COMPLAINT- 17

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

52.     However, the LCF Contract has no reference to transition nor does it impose any obligation on Evergreen to participate in any transition activities with Atlas.  Ms. Moore admitted as much in an email to Evergreen on March 11, 2010:  "well, there is no reference to transition in our contract."

53.     Despite the clear absence of any contractual obligation for Evergreen to participate in Boeing's transition efforts with Atlas, and despite Boeing's admission that the LCF Contract provides no such obligation, Ms. Moore nevertheless made additional requests of Evergreen on March 15, 2010, providing a list of 39 items of which "Atlas would like a copy."

54.     Moreover, in light of the fact that Boeing already has breached the confidentiality provisions of the LCF Contract by giving Evergreen's confidential information to Atlas without Evergreen's prior knowledge or consent and Boeing's conduct in terminating the LCF Contract in bad faith as hereinabove alleged, there is a substantial risk that Boeing will continue to violate its duties of good faith, fair dealing, integrity, ethical business conduct, and confidentiality by misusing Evergreen's trade secrets and proprietary information and make unauthorized use or disclosure of such information.

## First Cause Of Action

### [Breach of Contract]

55.     Evergreen incorporates by reference and re-alleges each and every allegation of the prior paragraphs as if fully set forth herein.

56.     On December 14, 2005, Evergreen and Boeing entered into the "Large Cargo Freighter Operator Service Agreement" whereby Boeing contracted to obtain from Evergreen, and Evergreen agreed to perform, "comprehensive transportation and support services related to transportation via the Large Cargo Freighter ('LCF') of 787 Cargo from various Boeing Supplier

COMPLAINT- 18

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

locations around the world to Boeing and Boeing Supplier locations in support of the 787 Program."

57. Evergreen fully performed its obligations under the LCF Contract as hereinabove alleged.

58. Pursuant to the terms of the LCF Contract, Boeing was obligated to conduct its business dealings with Evergreen fairly, impartially, and in an ethical and proper manner. Fair dealing with Evergreen was an express foundation of the LCF Contract. Boeing further was contractually obligated to act toward Evergreen with integrity and abide by the highest standards of ethical business conduct in the performance of the LCF Contract. Boeing promised that it would not engage in conduct or activity that may raise questions as to the company's honesty, impartiality, or reputation.

59. Boeing breached its contractual duties by secretly negotiating with Atlas, agreeing with Atlas to terminate the LCF Contract with Evergreen without cause or for any contract-based purposes, and violating its duties of fair dealing and impartiality by replacing Evergreen with Atlas solely to compromise a damages claim made against Boeing by Atlas all as alleged in greater detail above.

60. Furthermore, the LCF Contract requires Boeing to keep confidential and protect from unauthorized use and disclosure, among other things, all confidential, proprietary and/or trade secret information of Evergreen.

61. Boeing breached its contractual duties by obtaining confidential engine reports from Evergreen under the pretext that they were to be used for "budgeting" purposes when, instead, the engine reports were given to Atlas without Evergreen's knowledge or consent and in violation of Boeing's confidentiality obligations under the LCF Contract.

COMPLAINT- 19

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

62.     As a direct and proximate result of Boeing's breaches of the LCF Contract, Evergreen has and will sustain damages in excess of $175 million.

## Second Cause Of Action

### [Breach Of The Implied Covenant Of Good Faith And Fair Dealing]

63.     Evergreen incorporates by reference and re-alleges each and every allegation of the prior paragraphs as if fully set forth herein.

64.     In every contract there is an implied covenant of good faith and fair dealing which obligates each party to cooperate with the other so that each may obtain the full benefit of performance.  Even where the terms of the contract are literally complied with, but one party to the contract deliberately contravenes the intention and spirit of the contract, that party is liable for breach of the implied covenant of good faith and fair dealing.

65.     As alleged in greater detail above, the parties to the LCF Contract contemplated automatic renewal of the LCF Contract for three additional five-year terms absent cause, default, or convenience.

66.     While the LCF Contract permits termination for cause, default or convenience, under the implied covenant of good faith, Boeing had an implicit obligation to exercise good faith in the event it sought termination.

67.     Boeing breached the implied covenant of good faith and fair dealing by terminating the LCF Contract, which Boeing concedes was satisfactorily performed by Evergreen, for the bad faith reason of eliminating its liability with Atlas as alleged in greater detail above.

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

68.     As a direct and proximate result of Boeing's bad faith termination of the LCF Contract without cause, default, or for convenience, Evergreen has sustained, and will sustain, damages in excess of $175 million.

### Third Cause Of Action

**[Violation of the Washington Uniform Trade Secrets Act, RCW 98.108]**

69.     Evergreen incorporates by reference and re-alleges each and every allegation of the prior paragraphs as if fully set forth herein.

70.     The LCF Contract requires Boeing to keep confidential and protect from unauthorized use and disclosure, among other things, Evergreen's confidential, proprietary and/or trade secret information. Accordingly, pursuant to the LCF Contract, a confidential relationship was created between Evergreen and Boeing.

71.     On December 18, 2009, Boeing asked Evergreen to provide engine reports for the 12 engines used on the four Dreamlifter aircraft, claiming that the engine reports were needed as part of Boeing's "capital budget forecasting exercise for 2010.  Soon thereafter, Evergreen provided Boeing copies of the engine reports.

72.     Instead of using the engine reports for the purported use, Boeing provided copies of the reports to Atlas without Evergreen's knowledge or consent.  This was confirmed by Atlas employee Zachary Kamen who admitted Atlas had received Evergreen's engine reports from Boeing and requested copies of more current reports.

73.     As stated above, the proprietary and confidential aspects of the information in Evergreen's engine reports, among other things, reveal how and what Evergreen tracks regarding engine usage and what elements of engine management Evergreen tracks. This information has

COMPLAINT- 21

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

never been accessible to the public and the disclosure of such would give a competitor valuable, confidential trade secret information regarding Evergreen's fleet practices.

74.    Boeing misappropriated Evergreen's trade secrets by disclosing the engine reports to Atlas without Evergreen's permission.

75.    Such use of Evergreen's trade secret information constitutes misappropriation under the Washington Uniform Trade Secret Act, RCW 19.108.

76.    As a result of Boeing's conduct, Evergreen has been and continues to be damaged in an amount to be proven at trial.

## Fourth Cause of Action

### [Declaratory Relief]

77.    Evergreen incorporates by reference and re-alleges each and every allegation of the prior paragraphs as if fully set forth herein.

78.    An actual controversy has arisen and exists between the Evergreen and Boeing concerning Boeing's demands that Evergreen assist Boeing and Atlas in transitioning the operation of the LCF program from Evergreen to Atlas.

79.    As alleged in greater detail above, Boeing has made demands on Evergreen that Evergreen turn over enormous quantities of documents and data pertaining to Evergreen's operation, maintenance, and ground handling of the LCF program.

80.    Most, if not all, of the materials Boeing has sought from Evergreen consist either partially or entirely of Evergreen's trade secrets and proprietary information developed at great expense by Evergreen.

81.    The LCF Contract has no reference to transition and does not impose any obligation on Evergreen to participate in any transition activities with Atlas.

COMPLAINT- 22

**BADGLEY ~ MULLINS**
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

82.   Although Boeing admitted that there is no reference to transition in the LCF Contract, Boeing nevertheless made and continues to make additional demands of Evergreen to participate in Boeing's transition process with Atlas.  Moreover, Boeing has made these demands without disclosing to Evergreen that Boeing had previously and surreptitiously disclosed confidential engine reports – and perhaps other confidential information and data – to Atlas in violation of the LCF Contract.

83.   An actual controversy has arisen and now exists between Evergreen and Boeing concerning their respective rights and duties.  A judicial declaration is necessary and appropriate at this time under the circumstances described herein.  Evergreen therefore requests a judicial determination as to the foregoing dispute.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Evergreen International Airlines, Inc., prays for relief against Defendant The Boeing Company as set forth below.

### ON THE FIRST CAUSE OF ACTION

1.   For damages in an amount to be proven at trial;

2.   For pre- and post-judgment interest;

3.   For the costs and expenses of suit, including attorney's fees as appropriate; and

4.   For such other and further relief as the Court deems just and proper.

### ON THE SECOND CAUSE OF ACTION

5.   For damages in an amount to be proven at trial;

6.   For pre- and post-judgment interest;

7.   For the costs and expenses of suit, including attorney's fees as appropriate; and

8.   For such other and further relief as the Court deems just and proper.

COMPLAINT- 23

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

## ON THE THIRD CAUSE OF ACTION

9.      For damages in an amount to be proven at trial;

10.     For pre- and post-judgment interest;

11.     For the costs and expenses of suit, including attorney's fees pursuant to RCW 19.108.040; and

12.     For exemplary damages pursuant to RCW 19.108.030;

13.     For such other and further relief as the Court deems just and proper.

## ON THE FOURTH CAUSE OF ACTION

14.     For a declaration of the rights and obligations of the parties including a declaration that Evergreen has no obligation to participate in transition efforts with Atlas or to provide Boeing with Evergreen's confidential information and data, including producing Evergreen's documents and materials relating the LCF program;

15.     For preliminary and permanent injunctive relief prohibiting Boeing from demanding that Evergreen assist Boeing or Atlas or for Evergreen to participate in any transition activities relating to Atlas's operation of the LCF program and from demanding that Evergreen provide Boeing with Evergreen's confidential, proprietary and/or trade secret information;

16.     For the costs and expenses of suit, including attorney's fees as appropriate; and

17.     For such other and further relief as the Court deems just and proper.

DATED this 1st day of April, 2010.


C. DANA HOBART (Pro Hac Vice Pending)
MARY H. CHU (Pro Hac Vice Pending)
Hennigan , Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Telephone:  (213) 694-1200
Fax:  (213) 694-1234
hobartd@hbdlawyers.com
chum@hbdlawyers.com


BADGLEY MULLINS LAW GROUP, PLLC


s/  Donald H. Mullins
Donald H. Mullins, WSBA #4966
BADGLEY~MULLINS LAW GROUP
4750 Columbia Center
701 Fifth Avenue
Seattle, Washington, 98104
Telephone:  (206) 621-6566
Facsimile:  (206) 621-9686
Email:  donmullins@badgleymullins.com


s/ Allyssa J. Hale
Allyssa J. Hale, WSBA # 38429
BADGLEY~MULLINS LAW GROUP
4750 Columbia Center
701 Fifth Avenue
Seattle, Washington, 98104
Telephone:  (206) 621-6566
Facsimile:  (206) 621-9686
Email:  ahale@badgleymullins.com


Counsel for Plaintiff Evergreen International
Airlines, Inc.

COMPLAINT- 25

BADGLEY ~ MULLINS
LAW GROUP PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686