THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EVERGREEN INTERNATIONAL AIRLINES, INC., an Oregon corporation, | No. 2:10-CV-00568 (JCC) |
| Plaintiff, | MOTION TO DISMISS |
| v. | NOTE ON MOTION CALENDAR: May 21, 2010 |
| THE BOEING COMPANY, a Delaware corporation, | ORAL ARGUMENT REQUESTED |
| Defendant. | |

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC))

03017-0606/LEGAL18173424.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARDS ........................................................................................................... 6

ARGUMENT .......................................................................................................................... 7

I.  Counts I And II Fail To State A Claim Because The LCF Contract
    Unambiguously Gave Boeing The Unconditional Right Not To Renew
    The Contract For Any Reason ...................................................................... 7

    A.  Boeing Did Not Breach The LCF Contract By Enforcing Its Clear
        Contractual Right Not To Renew The Contract Beyond Its Initial
        Five-Year Term.................................................................................. 8

    B.  The Duty Of Good Faith And Fair Dealing Does Not Apply To
        Boeing's Exercise Of An Unqualified Right To Cancel The LCF
        Contract. ........................................................................................... 9

II. Evergreen's Claims That Boeing Violated The Confidentiality Provision
    Of The Contract Or Misappropriated Trade Secrets Are Foreclosed By
    The LCF Contract ........................................................................................ 15

    A.  Evergreen Cannot State A Claim For Breach Of Confidentiality
        Obligations Or Trade Secrets Misappropriation Based On Boeing's
        Exercise Of Its Contractual Rights As Owner Of All Reports And
        Data Pertaining To The Dreamlifters. .............................................. 15

        1.  Boeing Is The Sole Owner Of All Dreamlifter
            Documentation ....................................................................... 16

        2.  Boeing Can Use And Disclose All Preexisting Works ............... 18

    B.  Evergreen's Allegation That The Engine Reports Constitute Trade
        Secrets Is Inadequate Because It Is Entirely Conclusory........................ 19

        1.  Evergreen Fails To Allege Independent Economic Value
            And Novelty, And There Is No Fair Inference Of Either .......... 20

        2.  Given Boeing's Ownership And Disclosure Rights Under
            The Contract, Evergreen Cannot Show Reasonable Efforts
            To Maintain Secrecy ............................................................... 22

III. As A Matter Of Law, Evergreen Is Not Entitled To Declaratory Relief
     Contrary To Its Contractual Obligations............................................................ 23

CONCLUSION........................................................................................................................ 24

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03017-0606/LEGAL18173424.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

**INTRODUCTION**

Evergreen's Complaint against Boeing seeks to have this Court re-write a clear and unambiguous contract between two sophisticated parties. When Boeing and Evergreen formed their commercial arrangement to have Evergreen operate and maintain Boeing's "Dreamlifter" aircraft, the parties agreed to an "Initial Term" of five years. Boeing in turn reserved "the option, but not the obligation" to renew the contract for additional five-year terms. In fact, both parties retained the option, for any reason, not to renew the contract at the expiration of the initial five-year term. As Evergreen itself acknowledges, the "[c]ontract provided that either party could cancel." Compl. ¶ 22. Yet having agreed to that mutual right, Evergreen now claims that Boeing cannot exercise it.

Evergreen is wrong as a matter of law, and Evergreen's apparent disappointment in Boeing's decision not to renew cannot change what the parties agreed to. Under the express terms of the parties' agreement, Boeing had the unqualified right to decline to renew the contract after the initial term. And under settled Washington state law, that is the beginning and end of Counts I and II of the Complaint, which allege breach of contract and the covenant of good faith and fair dealing. Boeing simply enforced its expressly conferred rights, and "[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights" under a contract. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356, 360 (1991); *see also Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738-39, 935 P.2d 628, 633 (1997). There are many cases explaining that point. The Washington Court of Appeals decision in *Goodyear*, standing alone, disposes of Counts I and II.

Evergreen's trade secrets claim in Count III fares no better. By the terms of the parties' agreement, Boeing expressly owns all information generated as a result of the contract. Boeing has the further right to use and disclose Evergreen proprietary information. Engine reports, maintenance records, and a host of other operating data are, thus, the "sole and exclusive

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

03017-0606/LEGAL18173424.1

property of Boeing, and may be … disclosed by Boeing." Boeing's exercise of its ownership and disclosure rights cannot somehow amount to "misappropriation" or a breach of confidentiality. The parties' intent is clear on the face of the contract, and that ends the inquiry. *State Dep't of Corrs. v. Fluor Daniel, Inc.*, 160 Wn.2d 786, 795, 161 P.3d 372, 377 (2007). And even apart from the contractual impediments to Evergreen's claim, Evergreen's conclusory allegations of trade secret misappropriation also fail to plead all of the elements required for a trade secret under Washington law.

Lastly, in Count IV Evergreen seeks a declaration that it need not produce Dreamlifter documentation to Boeing. The problem for Evergreen is that the contract itself imposes those exact obligations. And if Evergreen's position were correct, another operator—including Boeing itself—would not be able to fly the Dreamlifters because many of the documents are required for FAA approval. As a matter of law, Evergreen is thus not entitled to the declaratory relief it seeks. In any event, the Court would be well within its discretion to dismiss Evergreen's request for declaratory relief as amorphous and unripe.

At the end of the day, this is a case in which two commercial parties executed a very detailed contract, and Boeing exercised rights that the contract clearly confers. To the extent Evergreen's Complaint reflects its displeasure, it nonetheless fails to state a claim. For the reasons set forth below, Evergreen's Complaint must be dismissed.

## BACKGROUND

The 787 Dreamliner, Boeing's next-generation commercial aircraft, has a unique supply chain: the Dreamliner's fuselage and component parts are constructed in locations around the world and then delivered to Everett, Washington for final assembly by Boeing. Compl. ¶ 11. To handle the transportation of large Dreamliner sections, Boeing specially reconfigured four 747-400 cargo planes into outsized Largo Cargo Freighters, also known as "Dreamlifters." Compl. ¶ 12. In 2005, Boeing and Evergreen entered the Large Cargo Freighter Operator Service Agreement ("LCF Contract"). Under the terms of the LCF Contract, Evergreen agreed to fly the

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 2

03017-0606/LEGAL18173424.1

Dreamlifters and perform other related flight services for Boeing. Compl. ¶¶ 16-17. In ruling on Boeing's motion to dismiss, this Court can consider plaintiff's Complaint as well as the LCF Contract, which is quoted and cited therein. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Excerpts of the LCF Contract are attached to this motion as exhibits.[1]

The duration of the LCF Contract is set forth in Section 3 of Exhibit G to the contract. Section 3 provides for an "Initial Term" of five years. Ex. 3 [Ex. G to LCF Contract, § 3.1 (emphasis added)]. It then gives Boeing "***the option, but not the obligation***," to exercise "up to three (3) consecutive five (5) year options to renew." Ex. 3 [Ex. G to LCF Contract, § 3.1 (emphasis added)]. Section 3.3, entitled "Renewal," specifies that the LCF Contract "will automatically renew for an additional five (5) years ***unless either***: (i) this Contract is terminated pursuant to Paragraph 3.4 below; ***or*** (ii) written notice of cancellation is received by [Evergreen] … at least six (6) months in advance of the termination date for the Initial Term, or any additional term (as applicable)." Ex. 3 [Ex. G to LCF Contract, § 3.3 (emphasis added)]. Section 3.3(ii) also gave Evergreen the same right to cancel at the end of a five-year term, provided Evergreen gave proper notice to Boeing. Ex. 3 [Ex. G to LCF Contract, § 3.3(ii)]; *see also* Compl. ¶ 22 ("[T]he LCF Contract provided that either party could cancel the contract.").

Section 3.3 thus provides two separate and independent ways in which Boeing can opt not to renew the LCF Contract for additional five-year terms. ***First***, under Section 3.3(i), Boeing can terminate the LCF Contract even prior to the end of a five-year term. Specifically, Section 3.3(i) refers to Section 3.4, which is entitled "Early Termination." Under Section 3.4, Boeing may terminate the contract "before the expiration of the Initial Term or any additional term" on the basis of, *inter alia*, breach by Evergreen, convenience to Boeing, or termination of the 787 program. Ex. 3 [Ex. G to the LCF Contract, § 3.4]. ***Second***, under Section 3.3(ii), Boeing (or Evergreen) can provide written notice of cancellation, so that the Contract ends at the expiration of a five-year term. *See* Ex. 3 [Ex. G to the LCF Contract, § 3.3(ii) (keying cancellation to the

---

[1] Pursuant to Local Rule 5(g)(3), Boeing has redacted two sub-sections that are not relevant to this motion.

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

"termination date for the Initial term, or any additional term").  Cancellation means nothing more than non-renewal.  There are no limitations on Boeing's ability to cancel pursuant to Section 3.3(ii), other than advance notice.

Consistent with the five-year terms and Boeing's right not to renew, the LCF Contract expressly contemplates other operators flying the planes.  The contract thus sets forth Boeing's ownership of the Dreamlifters themselves and their operational documentation.   Under the parties' agreement, Boeing retains ultimate ownership of its aircraft.  *See* Ex. 2 [Ex. D to LCF Contract, § 2.02 ("At all times during the Term, full legal title to each Item of Equipment shall remain vested in Boeing to the exclusion of [Evergreen].")]; *see also* Compl. ¶ 13 ("Boeing owned the LCFs.").  With respect to the aircraft documents, numerous provisions provide for Boeing's ownership, right of access, and use of the documents, including:

- **Evergreen's duty to maintain records.**  Evergreen is required to "maintain . . . in a form consistent with FAA . . . requirements, . . . all records, logs and other materials required by the FAA and the Aviation Authority to be maintained in respect of each Item of Equipment."  Ex. 2 [Ex. D to LCF Contract, § 7.07].

- **Boeing's ownership rights to all Dreamlifter records.**  The contract expressly provides in Section 20.2(b) of Exhibit G that "[a]ll technical data . . . first produced or resulting from performance of the [LCF Contract Statement of Work], shall be the ***sole and exclusive property of Boeing and may be used, duplicated, or disclosed by Boeing or third parties authorized by Boeing in any manner and for any purpose whatsoever***."  Ex. 3 [Ex. G to LCF Contract, § 20.2(b) (emphasis added)].

- **Boeing's inspection and copying rights.**  Boeing or its designated representative has the right to inspect and copy "all records, logs and other materials required by the FAA and the Aviation Authority," including "inspection, modification, service, maintenance, overhaul and other records" for Boeing's airframes and engines, at any reasonable time

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03017-0606/LEGAL18173424.1

for whatever reason.  Ex. 2 [Ex. D to LCF Contract, §§ 7.07, 8.01, 1 (defining "Aircraft" and "Aircraft Documentation")].

- **Evergreen's duty to return records with the aircraft.**  Evergreen is contractually obligated to provide Boeing with the full array of records and data necessary for another operator to fly and maintain the aircraft.  Ex. 2 [Ex. D to LCF Contract, § 17]; *see also id.* [Attachment 1G, Schedule 2, § 7(f)(i) (requiring that all records "required by the FAA and Aviation Authority to certify the Aircraft and place the Aircraft on an FAA approved maintenance program shall be delivered with the Aircraft").]  Specifically, Evergreen is required to "deliver to Boeing all updated logs, manuals, certificates and data and inspection, modification and overhaul and repair records amended to their latest amendment revision pertaining to the Airframe, Engines or engines, components, assemblies and appliances," including the "Maintenance Program for the airframe, engines, parts, etc."  Ex. 2 [Ex. D to LCF Contract, Attachment 1G, Schedule 2, § 3 ("Return of Aircraft Documentation")].  Such "records shall be all-inclusive for the Aircraft, Airframe, Engines, components, rotables, and assemblies."  Ex. 2 [Ex. D to LCF Contract, Attachment 1G, Schedule 2, § 7(f)(i)].

The LCF Contract recognizes that Evergreen may retain an interest in "preexisting works," Ex. 3 [Ex. G to LCF Contract, § 20.2(e)], but that interest is expressly qualified by Boeing's rights to use and share the information to enable transfer of the Dreamlifters to another operator.  The LCF Contract thus grants Boeing a "nonexclusive royalty-free license to practice any of the exclusive rights under the patents, copyrights, or trade secrets subsisting in all preexisting works," if any, for "Boeing's enjoyment of the [LCF] Work Product."  *Id.*  The contract also anticipates Boeing's use of Evergreen proprietary information to access information Boeing owns.  It provides that "despite any other obligations or restrictions imposed by [the contract provisions on confidential, proprietary and trade secret information], Boeing shall have the right to use, disclose, and reproduce [Evergreen's] Proprietary Information and Materials,

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 5

and make derivative works thereof, for the purposes of testing, certification, use, sale or support of any goods delivered under this Contract." Ex. 3 [Ex. G to LCF Contract, § 21]. Finally, as part of its obligation to return the airplanes and all related records to Boeing, Evergreen is required to "provide any and all documentation, data, drawings, records and manuals *regardless whether [Evergreen] considers such information proprietary*." Ex. 2 [Ex. D to LCF Contract, Attachment 1G, Schedule 2, § 7(f)(vi) (emphasis added)].

In March 2010, more than six months before the expiration of the initial five-year term, Boeing informed Evergreen in writing that it was cancelling the LCF Contract at the end of the term. Compl. ¶ 40; *see also* Compl. ¶ 21. On April 1, 2010, Evergreen sued Boeing, alleging that Boeing breached the LCF Contract by not exercising its option to renew beyond the initial term, because Boeing selected Atlas Air, Inc. to perform Dreamlifter flight services in order to resolve a separate business dispute with Atlas. *See, e.g.,* Compl. ¶ 1. Evergreen further alleges that Boeing's use and distribution of certain engine reports violated both the LCF Contract and Washington's Uniform Trade Secrets Act, RCW § 19.108. *See, e.g.,* Compl. ¶¶ 70-74. And Evergreen contends that it is not required to produce the "documents and materials relating [to] the LCF program" in its possession, or to "assist Boeing … in any transition activities" relating to continued operation of the LCF program. *See, e.g.*, Compl., Prayer for Relief ¶¶ 14-15. This motion to dismiss follows.

## LEGAL STANDARDS

The Court should dismiss a complaint under Fed. R. Civ. P. 12(b)(6) where the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Boeing disputes many of the allegations in the Complaint, but in resolving this motion, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party. *See id.* at 570; *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008). The Court, of course, is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Cycle Barn, Inc. v.*

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03017-0606/LEGAL18173424.1

*Arctic Cat Sales Inc.*, 2010 WL 1180757, at \*2 (W.D. Wash. Mar. 24, 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)).   As noted above, the Court may consider both Evergreen's Complaint and the LCF Contract itself, see *Marder*, 450 F.3d at 448, and "[w]hen a disparity exists between the written instruments annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control."   CHARLES A. WRIGHT & ARTHUR MILLER, FED. PRACTICE & PROC., CIV. 2d § 1327 at 762-63 (2010); *see also Minnick v. Clearwire US, LLC*, 2010 WL 431879, at \*2 (W.D. Wash. Feb. 5, 2010) ("To the extent documents referenced in a complaint contradict a plaintiff's conclusory allegations, the Court is not required to accept those allegations as true.").

The parties chose Washington law to govern any dispute.   Ex. 2 [Ex. D to LCF Contract, § 24.13].   Under Washington law, "[t]he goal of contract interpretation is to carry out the intent of the parties as manifested if possible, by the parties' own contract language."   *Fluor Daniel, Inc.*, 160 Wn.2d at 795, 161 P.3d at 377 (citing *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262, 267 (2005)).   In interpreting contract terms, Washington courts give "words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."   *Hearst*, 154 Wn.2d at 503, 115 P.3d at 267; *see also Ingalls v. ICMA-RC Servs., LLC*, 2010 WL 532460, at \*1 (Wn. App. Feb. 16, 2010).

## ARGUMENT

### I.   Counts I And II Fail To State A Claim Because The LCF Contract Unambiguously Gave Boeing The Unconditional Right Not To Renew The Contract For Any Reason.

Evergreen expressly concedes that "the LCF Contract provided that either party could cancel the contract."   Compl. ¶ 22.   Evergreen thus does not claim that Boeing breached the express provisions by declining to renew the contract beyond its initial five-year term.   Rather, Evergreen claims that Boeing's alleged basis for its decision—to resolve a separate business dispute with Atlas—breached implicit obligations of good faith and fair dealing and violated general commitments to act ethically and fairly.   Those claims fail as a matter of law.   The LCF

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03017-0606/LEGAL18173424.1

Contract expressly allowed Boeing not to renew the contract for any reason, and Washington law forecloses Evergreen's attempt to have implied duties trump clear contractual language.

**A.    Boeing Did Not Breach The LCF Contract By Enforcing Its Clear Contractual Right Not To Renew The Contract Beyond Its Initial Five-Year Term**

Simply put, Boeing has the unqualified right to cancel the contract after expiration of the initial five-year term.  Section 3.1 of Exhibit G specifically provides that the contract "***may*** continue through an extended period of twenty (20) years," but that it is "subject to the completion of an Initial Term and the ***exercise of*** up to three (3) consecutive five (5) year options to renew."  (Emphasis added).  Boeing's exercise of those options is just that, optional: the LCF Contract makes clear that Boeing has "***the option, but not the obligation***" to renew the contract.  Ex. 3 [Ex. G to LCF Contract, § 3.1 (emphasis added)].

Section 3.3 of Exhibit G, entitled "Renewal," further makes clear that the only requirement for cancellation at the end of a five-year term is advance notice.  Section 3.3 provides that the LCF Contract "will automatically renew for an additional (5) years ***unless either***: (i) this Contract is terminated pursuant to Paragraph 3.4 below [i.e., early termination for cause, convenience, termination of 787 program, etc.]; ***or*** (ii) written notice of cancellation is received by [Evergreen] … at least six (6) months in advance of the termination date for the Initial Term."  Ex. 3 [Ex. G to LCF Contract, § 3.3 (emphasis added)].  Section 3.3(ii) thus granted Boeing (and Evergreen) the unrestricted ability to cancel the contract at the expiration of a five-year term.  Boeing simply exercised its rights and provided proper notice to Evergreen, and the Complaint does not allege otherwise.  That is the beginning and end of this case: Boeing obviously did not breach the LCF Contract when it elected to enforce a clear right granted to it under the parties' agreement.

Evergreen attempts to avoid Section 3.3(ii) by at times suggesting that Boeing's only method for not renewing the LCF Contract was through the early termination provisions in Section 3.3(i).  At Complaint Paragraph 20, for example, Evergreen quotes and paraphrases from

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Section 3, mentioning Boeing's early termination rights in Section 3.3(i) but failing to acknowledge Boeing's unlimited right of cancellation in Section 3.3(ii). *See also, e.g.*, Compl. ¶ 65 ("[T]he parties to the LCF Contract contemplated automatic renewal of the LCF Contract for three additional five-year terms absent cause, default, or convenience."). It is true that cause, default, and convenience are all valid ways for Boeing to end the LCF Contract. But they are not exhaustive. Section 3.3(ii) provides an independent basis for cancelling the contract—at the end of a five-year term—and simply ignoring it does not thereby make it go away.

Evergreen's allegations here concern Boeing's decision not to renew the LCF Contract after expiration of its initial five-year term, not early termination within that period. *See, e.g.*, Compl. ¶ 21 (noting Boeing's communication to Evergreen "that it was cancelling the LCF Contract at the end of the initial term"); *see also* Compl. ¶¶ 40, 42. This case is thus governed by Section 3.3(ii) of Exhibit G, which plainly allows Boeing to decline to renew the LCF Contract for any reason, so long as proper notice is provided. And under Washington law, a court "cannot rule out of the contract [the] language which the parties thereto have put into it, … nor can the court create a contract for the parties which they did not make themselves." *Farmers Ins. Co. of Wash. v. Miller*, 87 Wn.2d 70, 73, 549 P.2d 9, 11 (1976).

### B.     The Duty Of Good Faith And Fair Dealing Does Not Apply To Boeing's Exercise Of An Unqualified Right To Cancel The LCF Contract.

Faced with Boeing's unqualified right not to renew, Evergreen argues that Boeing's alleged rationale for that decision—to resolve a separate business dispute with Atlas—constituted a breach of the duty of good faith and fair dealing. That allegation fails to state a claim upon which relief can be granted. The exercise of an express contractual right does not breach a duty of good faith and fair dealing, as Washington courts have squarely held. Because Section 3.3(ii) imposes no limitations on Boeing's ability to cancel the LCF Contract, the duty of good faith and fair dealing simply does not apply here as a matter of law.

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 9

03017-0606/LEGAL18173424.1

The implied duty of good faith and fair dealing has "very specific boundaries."  *FMC Techs., Inc. v. Edwards*, 2007 WL 1725098, at *8 (W.D. Wash. June 12, 2007) (Coughenour, J.), *aff'd*, 302 Fed. Appx. 577 (9th Cir. 2008).  As the Washington Supreme Court has explained, one clear boundary is that "[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights" under a contract.  *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356, 360 (1991); *see also FMC Techs., Inc.*, 2007 WL 1725098, at *8 (discussing *Badgett*); *Willis v. Champlain Cable Corp.*, 109 Wn.2d 747, 759, 748 P.2d 621, 627 (1988) (duty of good faith and fair dealing cannot be used "to modify the express terms of a written contract agreed to by competent parties"); *Myers v. State*, 152 Wn. App. 823, 828, 218 P.3d 241, 244 (2009) ("[C]ovenants of good faith and fair dealing do not trump express terms or unambiguous rights in a contract."); *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 739, 935 P.2d 628, 632 (1997) (explaining that the duty of good faith and fair dealing cannot be used to "contradict terms or conditions for which a party has bargained") (internal quotation marks omitted); *Seattle-First Nat'l Bank v. Westwood Lumber, Inc.*, 65 Wn. App. 811, 822, 829 P.2d 1152, 1158 (1992) (citing *Badgett* and holding that "[a]s a matter of law, [defendant] did not breach th[e] duty [of good faith] simply by enforcing the note according to its terms"); 23 WILLISTON ON CONTRACTS § 63:22 (4th ed.) ("As a general principle, there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract.").

Those cases and authorities reflect the broader principle that courts will not rewrite contracts to change the bargain struck by the parties themselves.  As explained in *Badgett*, the Court would not allow "a free-floating duty of good faith unattached to the underlying legal document," as that would improperly "create obligations on the parties in addition to those contained in the contract."  116 Wn.2d at 570, 807 P.2d at 360.  Thus this Court in *FMC* similarly rejected application of the implied duty of good faith to an asserted right without "a

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 10

03017-0606/LEGAL18173424.1

textual source" in the contract, because "Plaintiffs could have bargained for a [particular] contract term" but "[t]hey did not." *FMC Techs., Inc.*, 2007 WL 1725098, at *8; *see also id.* (citing *Badgett* and noting that "an 'implied' (i.e., unenumerated) contractual right cannot support an implied duty of good faith and fair dealing").

The Washington Court of Appeals decision in *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 935 P.2d 628 (1997), is directly on point and dispositive here. In *Goodyear*, Whiteman agreed to sell Goodyear tires as an authorized dealer. *Id.* at 735, 935 P.2d at 631. But the parties' contract expressly reserved to Goodyear "'the right to establish its own outlets for the sale of Goodyear Products or to sell Goodyear Products to other customers in [Whiteman's] trade area.'" *Id.* at 736, 935 P.2d at 631. Years after the contract was executed, Goodyear acquired a tire dealership in Whiteman's sales region and began selling tires out of that store, eventually forcing Whiteman out of business. *Id.* at 737, 935 P.2d at 631-32. Whiteman sued, claiming that while Goodyear retained the express right to sell tires in Whiteman's area, Goodyear's decision to sell in that location nonetheless constituted a breach of the covenant of good faith implied in the parties' dealer contract. *Id.* at 738, 935 P.2d at 632.

The Court of Appeals framed the question exactly as it is posed here: "Does the implied covenant of good faith that is present in every contract apply to a party's exercise of an express and unconditional contract right?" *Id.* at 735, 935 P.2d at 631. Consistent with the decisions set forth above, the Court answered that question "no," affirming the summary dismissal of Whiteman's complaint. According to *Goodyear*, "[t]he covenant of good faith applies when the contract gives one party discretionary authority to determine a contract term; it does not apply to contradict contract terms." *Id.* at 738, 935 P.2d at 632 (emphasis in original). Because "Goodyear's right to sell in Whiteman's trade area … is unconditional," the duty of good faith and fair dealing did not apply, *id.* at 741, 935 P.2d at 633, even where Whiteman claimed that Goodyear's conduct "deprive[d] Whiteman of the benefit of its agreement to act as a Goodyear dealer," *id.* at 735, 935 P.2d at 631.

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

So, too, here.   As in *Goodyear*, there are no qualifications on Boeing's ability under Section 3.3(ii) to cancel the LCF Contract after the initial term.   And while *Goodyear* involved the exercise of an unconditional right to compete rather than an unconditional right to cancel, the logic of *Goodyear* plainly controls.   The *Goodyear* Court made clear that the result would be the same in both contexts, citing with approval the Sixth Circuit's decision in *Davis v. Sears, Roebuck & Co.*, 873 F.2d 888 (6th Cir. 1989), which "held that the covenant of good faith did not apply to a contract provision giving both parties the right to terminate … because th[is] express provision gave the parties the unconditional right to do so."   *Goodyear*, 86 Wn. App. at 741 n.5, 935 P.2d at 633 n.5.   Not surprisingly, many other jurisdictions reach the same result, holding that in the particular context of unconditional rights to terminate a contract, the duty of good faith and fair dealing does not apply.   Evergreen thus asks this Court to ignore not only Washington law, but also the approaches of many other courts to have considered this issue.[2]

In short, consistent with both Washington law and the law of other jurisdictions, the duty of good faith and fair dealing does not apply to Boeing's exercise of its unconditional right to not renew the LCF Contract.   Any other conclusion would retroactively alter the parties' agreement, in clear contravention of the Washington Supreme Court's warning that "the duty of good faith does not extend to obligate a party to accept a material change in the terms of its contract." *Badgett*, 116 Wn.2d at 569, 807 P.2d at 360; *see also FMC Techs., Inc.*, 2007 WL 1725098, at *8 (explaining that under *Badgett*, "[e]xpansion of a contract beyond the obligations already in the contract is impermissible").   Evergreen agreed to a provision that gave both it and Boeing the

---

[2] *See, e.g.*, *Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 679 (2d Cir. 1985) (applying Connecticut law and holding that "where the contract expressly provides for termination on thirty days notice, no good faith requirement should be implied to override the contractual provisions"); *Cardinal Stone Co. v. Rival Mfg. Co.*, 669 F.2d 395, 396 (6th Cir.1982) (per curiam) (applying Ohio law); *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (applying Virginia law); *Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 703 F. Supp. 637, 644 (W.D. Mich. 1988) (applying Kansas law), *aff'd in relevant part and rev'd in part on other grounds*, 915 F.2d 1038 (6th Cir. 1990); *Blalock Mach. & Equip. Co. v. Iowa Mfg. Co.*, 576 F. Supp. 774, 776-78 (N.D. Ga. 1983) (applying Iowa law); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728-29 (Cal. 1992) (applying California law); *Grossman v. Columbine Med. Group, Inc.*, 12 P.3d 269, 271 (Colo. Ct. App. 2000) (applying Colorado law).

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

right to cancel the contract at the end of a five-year term; Evergreen cannot simply escape its

bargain once Boeing chooses to invoke a right that both parties enjoyed.

Nor can Evergreen avoid the plain import of Washington law by claiming that Boeing's

decision not to renew the LCF Contract violated a duty of good faith and fair dealing arising

from an express reference in the contract to Boeing's Code of Conduct.  *See* Compl. ¶¶ 22, 58.

That provision, Section 25.4 to Exhibit G, states as follows:

> Code of Conduct.  Boeing is committed to conducting its business
> fairly, impartially, and in an ethical and proper manner.  Boeing's
> expectation is that [Evergreen] also will conduct its business fairly,
> impartially, and in an ethical and proper manner.  Boeing's further
> expectation is that [Evergreen] will have (or will develop) and
> adhere to a code of ethical standards.  If [Evergreen] has cause to
> believe that Boeing or any employee or agent of Boeing has
> behaved improperly or unethically under this Contract, [Evergreen]
> shall report such behavior to The Boeing Company Ethics hotline.
> Copies of The Boeing Company Code of Conduct and contacts for
> such reports are available on www.boeing.com under "Ethics and
> Business Conduct."  Although Boeing will not use the failure to
> report improper and unethical behavior as a basis for claiming
> breach of Contract by [Evergreen], [Evergreen] is encouraged to
> exert reasonable effort to report such behavior when warranted.

Ex. 3 [Ex. G to LCF Contract, § 25.4].  According to Evergreen, Boeing's determination to not

renew the LCF Contract and instead award it to Atlas "breached [Boeing's] contractual promises

to conduct its business fairly, impartially, and in an ethical and proper manner."  Compl. ¶ 1.

The LCF Contract's reference to the Boeing Code of Conduct cannot bear the weight that

Evergreen would place on it, for two main reasons.  *First*, it cannot be "unfair," "unethical," or

"improper" for Boeing to do precisely what the LCF Contract clearly allows it to do.  As the

cases discussed above demonstrate, it is not "bad faith" to stand on the contract.  *Second*, it is

questionable whether Section 25.4 can even give rise to a breach of contract.  The provision does

not affirmatively require Boeing to do anything, and it does not suggest—and there is no reason

why it would—that following other provisions of the contract could be unethical.  Section 25.4

makes no reference whatsoever to Boeing's rights of cancellation in Section 3, nor does it refer

to any of Boeing's numerous express rights under the contract.  Under these circumstances, there

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

is nothing in Section 25.4 to suggest that the reference to Boeing's Code of Conduct was somehow intended to alter those express provisions. Indeed, to the extent Section 25.4 mentions the contract at all, it only says that Boeing will ***not*** treat a failure to report unethical conduct as a breach of contract. And insofar as Section 25.4 imposes any specific affirmative obligations, it imposes them on Evergreen, who is required to report suspected violations to a Boeing hotline.

The Code of Conduct provision is essentially a statement of policy, not a binding limitation on other provisions in the contract, and similar statements of policy have been treated as unenforceable. *See Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143, 1145 (1988) ("[P]olicy statements as written may not amount to promises of specific treatment and [may] merely be general statements of company policy, and thus, not binding.") (internal quotation marks omitted); *Magula v. Benton Franklin Title Ins. Co.*, 79 Wn. App. 1, 5, 901 P.2d 313, 316 (1995) ("General promises of policy are not binding."). Here, Section 25.4 reflects Boeing's "commit[ment]" to fair business practices and Boeing's "expectation" that Evergreen will adhere to the same standards, and further provides that if questions arise under this provision Evergreen's proper recourse is to contact a special Boeing hotline. Evergreen would instead convert this statement of common principles into the basis for an award of damages, inviting courts to undertake the difficult task of crafting judicially manageable standards for what constitutes "fair" and "proper" business practices, without any guidance in the contract itself.

Wholly apart from the contractual and legal flaws in Evergreen's reliance on the Code of Conduct and the implied covenant of good faith, the Complaint itself belies any allegation that Boeing acted in bad faith by allegedly selecting Atlas to fly the Dreamlifters in order to resolve a separate dispute with Atlas. As Evergreen itself alleges, Boeing told Evergreen why it was not renewing the contract. Compl. ¶¶ 37, 44. Given that Boeing had the right to cancel the contract, *see* Compl. ¶ 22 (admitting the "[c]ontract provided that either party could cancel"), and that Boeing told Evergreen the basis for the cancellation, *see* Compl. ¶¶ 37, 44, Evergreen's

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03017-0606/LEGAL18173424.1

allegations of bad faith ring hollow and could not provide the basis for a claim—even if such a claim were not foreclosed both by the parties' contract and Washington law.

## II.    Evergreen's Claims That Boeing Violated The Confidentiality Provision Of The Contract Or Misappropriated Trade Secrets Are Foreclosed By The LCF Contract.

Evergreen asserts that Boeing breached its contractual duties and misappropriated trade secrets by providing to Atlas "confidential and proprietary internal reports" as part of its transition of the Dreamlifters to a new operator.  Compl. ¶ 5.  Evergreen further claims that "[m]ost, if not all of the materials Boeing has sought from Evergreen consist either partially or entirely of Evergreen's trade secrets and proprietary information." Compl. ¶ 51.  As set forth below, Boeing owns *all* of the technical data Evergreen has ever generated regarding the Dreamlifters.  There is thus no legitimate claim of misappropriation.  Moreover, Evergreen does not even identify any allegedly misappropriated trade secrets in its Complaint—much less anything that would constitute a trade secret—other than the "engine reports for the 12 engines used on the four Dreamlifter aircraft,"  Compl. ¶¶ 47-48, 61, 71-72, and Evergreen fails to set forth how any of that data is a trade secret.

### A.    Evergreen Cannot State A Claim For Breach Of Confidentiality Obligations Or Trade Secrets Misappropriation Based On Boeing's Exercise Of Its Contractual Rights As Owner Of All Reports And Data Pertaining To The Dreamlifters.

Evergreen says that the Dreamlifter engine reports allegedly disclosed by Boeing— reports that Evergreen does not describe in its Complaint—consist of Evergreen "confidential, proprietary and/or trade secret information."   Compl. ¶ 70.   However, for a claim of misappropriation, there must be disclosure of a trade secret "by a person who acquired [it] under circumstances giving rise to a duty to maintain its secrecy or limit its use."   RCW § 19.108.010(2)(b)(ii)(B).  Under the plain terms of the LCF Contract, Evergreen's fundamental premise is false as a matter of law.  Boeing owns the data.  Evergreen fails to state a claim either for breach of contract or trade secrets misappropriation.

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 15

03017-0606/LEGAL18173424.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

### 1.    Boeing Is The Sole Owner Of All Dreamlifter Documentation.

As an initial matter, Boeing is the sole and exclusive owner of the twelve engines for which it allegedly requested and received engine reports.  The contract says:  "At all times during the Term, full legal title to each Item of Equipment shall remain vested in Boeing to the exclusion of Operator."  Ex. 3 [Ex. D to LCF Contract, § 2.02].  The engines are covered "equipment."  *Id.* § 1 ("'Item(s) of Equipment' or 'Item(s)' means all or any of the … Engines.").  The parties recognized that, at some point, Boeing would retake possession of its equipment, and either transition to another operator or to another owner.  Indeed, Article 17 of Exhibit D is entirely devoted to the return of the aircraft and their documentation.

Unsurprisingly, Boeing contracted to retain ownership of all data and reports generated by Evergreen in flying or maintaining Boeing's engines.  Under Section 20.2(b) of Exhibit G to the LCF Contract:

> ***All technical data***, including but not limited to all research and engineering data and designs, engineering and manufacturing drawings, specifications, standards, process information, manuals, technical reports, ***in any form, first produced or resulting from performance of the [LCF Contract Statement of Work], shall be the sole and exclusive property of Boeing and may be used, duplicated, or disclosed by Boeing*** or third parties authorized by Boeing in any manner and for any purpose whatsoever.

Ex. 3 [Ex. G to LCF Contract, §20.2(b) (emphasis added)].  By definition the covered data includes the data generated by Evergreen on "engine usage" and "elements of engine management" tracked by Evergreen in performing maintenance on the Dreamlifter engines.  Compl. ¶ 48.  Simply put, Evergreen cannot claim a breach of confidentiality or trade secrets misappropriation when, by contract, Boeing owns the Dreamlifter engine reports and may disclose them for any purpose whatsoever.  Where, as here, the parties' intent is clear on the face of the contract, that ends the inquiry.  *See Fluor Daniel, Inc.*, 160 Wn.2d at 795, 161 P.3d at 377 ("The goal of contract interpretation is to carry out the intent of the parties as manifested, if possible, by the parties' own contract language."); *Hearst*, 154 Wn.2d at 503-04, 115 P.3d at 267

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 16

03017-0606/LEGAL18173424.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

("Washington … follows[s] the objective manifestation theory of contracts" and gives "words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent.").

While Evergreen characterizes Boeing's request for reports on its twelve engines as "unusual," the LCF Contract makes clear it was anything but "unusual."   Under Sections 7.07 and 8.01 of Exhibit D, Boeing is entitled (but not obligated) to inspect and copy such reports "at any reasonable time" for any reason.   Ex. 2 [Ex. D to LCF Contract, § 7.07; *see id.* § 8.01]. Were there any doubts about Boeing's right to request and disclose the Dreamlifter engine reports, other provisions of the LCF Contract and the "contract as a whole" dispel them.   *See Carpenter v. Remtech, Inc.*, 226 P.3d 159, 161 (Wash. Ct. App. 2010).   Relevant provisions include:

- **Providing data pertaining to engines.**   Evergreen is required to provide all "logs, manuals, certificates and data, and inspection, modification and overhaul and repair records … pertaining to the … Engines or engines," including the "complete Maintenance Program for the … engines."   Ex. 2 [Ex. D to LCF Contract, Attachment 1G, Schedule 2, § 3].   Such records must be "all-inclusive for the … Engines." *Id.* § 7(f)(i).

- **Historical records on engines.**   Evergreen must provide: "All historical records for Airframe and Engines"; "Airframe and Engines current inspection status and operating times"; "status of time and cycle controlled components," including "Engines"; "All Engines' trend monitoring program documents"; "Engine Ground Handling Document"; and the list goes on.   Ex. 2 [Ex. D to LCF Contract, Attachment 1F ("Form of Re-Delivery Certificate"), Annex I ("Aircraft Documentation")].

- **Records necessary for maintenance and FAA approval.**   The information is to be provided precisely to allow Boeing or its agent to develop "a complete maintenance program" going forward.   Ex. 2 [Ex. D to LCF Contract, Attachment 1G, Schedule 2, § 3;

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*see also id.* § 7(f)(i) (requiring delivery of all records necessary "to certify the Aircraft and place the Aircraft on an FAA approved maintenance program"); Exhibit D to LCF Contract, §§ 17.10, 17.11].

Evergreen has no contractual basis for withholding engine reports.

### 2.    Boeing Can Use And Disclose All Preexisting Works.

Given the breadth of Boeing's ownership rights, the only things Evergreen can possibly claim belong to it under the LCF Contract are "preexisting works."   Ex. 3 [Ex. G to LCF Contract, § 20.2(e)].  Thus, to try to shoehorn its claims into this narrow exception, Evergreen asserts that the Dreamlifter engine reports "are generated from a proprietary Evergreen system that *predates* the LCF contract."  Compl. ¶ 48 (emphasis added).  Evergreen does not, however, allege that Boeing disclosed a proprietary *system*, only *reports* about the twelve Dreamlifter engines.  *See* Compl. ¶¶ 49, 61, 71-72.  The fact that a report was generated using an allegedly preexisting proprietary system does not, in turn, make that report proprietary.  Nor can it.  Any reports about Boeing's LCF engines were necessarily "first produced or result[] from performance of the [LCF Contract Statement of Work]," and thus, under the LCF Contract are "the sole and exclusive property of Boeing" and may be "disclosed by Boeing."  Ex. 3 [Ex. G to LCF Contract, § 20.2(b)].

Even if the Dreamlifter engine reports could somehow be deemed to contain Evergreen trade secrets, the LCF Contract grants Boeing an "irrevocable nonexclusive royalty-free license" to practice any "trade secrets subsisting in all preexisting works."  *Id.* § 20.2(e).  That license is to permit "Boeing's enjoyment of the Work Product," meaning the technical data and reports produced or generated by Evergreen but owned by Boeing under the LCF Contract.  *Id.*; *see id.* § 20.2(b).

Obviously, Boeing cannot enjoy the use of its engine data—data collected in accordance with FAA regulations, and needed to transfer the airplanes to a new operator under FAA regulations, *see* 14 C.F.R. Part 121—if it cannot disclose that data to a new operator.  Evergreen

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 18

03017-0606/LEGAL18173424.1

cannot claim that any such disclosure breaches "Boeing's confidentiality obligations under the LCF contract." Compl. ¶ 61; *see id.* ¶ 70. The very provision of the contract that Evergreen relies on gives Boeing the right to disclose Evergreen's trade secrets, thereby limiting Evergreen's rights. Article 21 of Exhibit G requires Boeing to keep confidential and protect from disclosure Evergreen's "Proprietary Information and Materials," including "confidential, proprietary, and/or trade secret information." That same provision then gives Boeing a disclosure right: "despite any other obligations or restrictions imposed by this Article, Boeing shall have the right to use, ***disclose*** and reproduce Operator's Proprietary Information and Materials … for the purposes of testing, certification, use, sale or support of any goods delivered under this Contract." Ex. 3 [Ex. G to LCF Contract, § 21 (emphasis added)]. Boeing has the right to disclose the Dreamlifter engine reports and any trade secrets purportedly associated with them to Atlas, as necessary for Boeing's continued use of its Dreamlifter airplanes. There is nothing ambiguous here, and a "'court will not read an ambiguity into a contract that is otherwise clear and unambiguous.'" *Ingalls*, 2010 WL 532460, at *3 (quoting *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 420, 909 P.2d 1323, 1326 (1995)).

In sum, Evergreen's trade secret misappropriation claim and claim for breach of contract based on alleged disclosure of confidential information both fail on the unambiguous text of the LCF Contract. The contract makes clear that Boeing has ownership of the Dreamlifter engine reports, a right to obtain the Dreamlifter engine reports, and a right to disclose the Dreamlifter engine reports—even if generated from a proprietary system. Because there is nothing unlawful about Boeing's alleged disclosure of the Dreamlifter engine reports, Count III and Count I (to the extent based on paragraphs 60 and 61 of the Complaint), must be dismissed.

**B.      Evergreen's Allegation That The Engine Reports Constitute Trade Secrets Is Inadequate Because It Is Entirely Conclusory.**

Evergreen's trade secret misappropriation claim also fails for the additional reason that Evergreen has failed to allege sufficiently and plausibly that the Dreamlifter engine reports are

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03017-0606/LEGAL18173424.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

trade secrets under the Washington Uniform Trade Secrets Act, RCW § 19.108.  Washington defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process that (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; **and** (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  RCW § 19.108.010(4) (emphasis added).   The Dreamlifter engine reports allegedly disclosed by Boeing fail both criteria.

### 1.   Evergreen Fails To Allege Independent Economic Value And Novelty, And There Is No Fair Inference Of Either.

Evergreen has not alleged, as Washington law requires, facts to show that the purportedly proprietary information in the Dreamlifter engine reports "derives ***independent*** economic value from not being generally known to the public."  *MP Med. Inc. v. Wegman*, 151 Wn. App. 409, 421, 213 P.3d 931, 938 (2009) (emphasis added).  And Evergreen has failed to allege a single fact as to how a competitor might benefit financially from the purportedly proprietary information in the Dreamlifter engine reports, or how a competitor would use that information to actually compete with Evergreen.  *Cf. N. Pac. Crane Co. v. Bear*, 2009 WL 1925888, at *7 (Wn. App. 2009) ("Washington cases involving improper use under the act have generally addressed situations where information was used to compete or engage in unfair competition.").  It is not enough to say that the reports give insight into Evergreen's practices.  To be a trade secret under Washington law, the allegedly revealed proprietary information must be novel, but Evergreen has not alleged that the Dreamlifter engine reports reflect "novelty."  *Buffets, Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996) (applying Washington law).

Evergreen only alleges that the Dreamlifter engine reports "reveal[] how and what Evergreen tracks regarding engine usage," and that "[d]isclosure of this information would give a competitor valuable, confidential information regarding Evergreen's fleet practices."  Compl.

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

¶¶ 48, 73.  Those are precisely the kind of conclusory assertions that fail to state a claim.  "As the Supreme Court indicated in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)], a formulaic recitation of the elements of a cause of action will not suffice to state a claim." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008) (dismissing claim under Uniform Trade Secrets Acts).  Put differently, Evergreen's allegations do not "quantify in any meaningful way the competitive advantage that the hypothetical plagiarizer would enjoy."  *Woo v. Fireman's Fund Ins. Co.*, 137 Wn. App. 480, 489, 154 P.3d 236, 240 (2007).  In *Woo*, the Washington Court of Appeals rejected as too conclusory similar assertions that disclosure of an insurance company's detailed processing manual would result in "a serious loss of [its] property interest" and "would result in economic value to the competitor and place it in a competitive advantage."  *Id.* at 488, 154 P.3d at 240.  Evergreen's allegations are even more conclusory.

Moreover, Evergreen's claim of a trade secret in the categories of information it collected for Boeing is simply implausible given FAA and contractual requirements that such information be collected and maintained.  The Federal Aviation Regulations control in great detail the necessary maintenance and inspection requirements for flying airplanes, *see generally* 14 C.F.R. Part 121, as well as the information that must be recorded and maintained for airplane engines, *see, e.g.*, 14 C.F.R. § 121.380.  Likewise, the LCF Contract lays out Evergreen's specific obligations when it comes to engine data.  *See, e.g.*, Ex. 2 [Ex. D to LCF Contract, §§ 7.07, 17; Attachment 1F, Annex I; Attachment 1G, Schedule 2, § 7(g)(iii)].

Evergreen has not alleged a single fact suggesting it does something novel and unique, much less different from what any other reasonable operator would do in this closely regulated field.  Even if the Dreamlifter engine reports "were more detailed than those of its competitors"—a fact not alleged by Evergreen—that would "not mandate a finding of novelty." *Buffets*, 73 F.3d at 968.  Nor has Evergreen alleged that the data collected in the Dreamlifter engine reports would reveal anything more than "good [engine maintenance] practices and

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 21

03017-0606/LEGAL18173424.1

philosophies that would be obvious" to any operator setting out to comply with FAA regulations and Boeing's contractual requirements. *Woo*, 137 Wn. App. at 489, 154 P.3d at 240.  In other words, Evergreen has not alleged facts to show that whatever allegedly proprietary information might be revealed in the Dreamlifter engine reports is anything other than "fairly basic," and thus not a trade secret. *Buffets*, 73 F.3d at 968.

> **2.    Given Boeing's Ownership And Disclosure Rights Under The Contract, Evergreen Cannot Show Reasonable Efforts To Maintain Secrecy.**

Evergreen also cannot plausibly contend that the Dreamlifter engine reports are the subject of reasonable efforts to maintain their secrecy.  The LCF Contract gives Boeing the right to disclose them "in any manner and for any purpose whatsoever."   Ex. 3 [Ex. G to LCF Contract, § 20.2(b)].   Even assuming, *arguendo*, that the Dreamlifter engine reports reflect preexisting novel proprietary Evergreen information, Boeing owns the reports.  *Id.*  Evergreen is contractually obligated to disclose them to Boeing. Ex. 2 [Ex. D to LCF Contract, §§ 7.07, 8.01, 17].  And Boeing is free to make full use of them, including disclosing them "for the purposes of testing, certification, use, sale or support" of the Dreamlifter aircraft.  Ex. 3 [Ex. G to LCF Contract, § 21].

Indeed, under Section 17.11 of Exhibit D, if Boeing decides to sell or lease the Dreamlifters, Evergreen must "permit[] potential operators, lessees or purchases to inspect the Aircraft ***and the records relating thereto***."   (Emphasis added).   Where, as here, Evergreen's contract unambiguously contemplates disclosure of the Dreamlifter engine reports by Boeing, and to third parties, Evergreen cannot plausibly allege that its purported trade secret(s) is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," at least as to disclosure by Boeing.  RCW § 19.108.101(4)(b).  Having agreed to a contract where the data is owned by Boeing, may be disclosed by Boeing, and certification and operation of the aircraft by others at some point is a given, Evergreen cannot now assert that the data has any kind of secret status.

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### III. As A Matter Of Law, Evergreen Is Not Entitled To Declaratory Relief Contrary To Its Contractual Obligations.

Evergreen broadly asserts that it has no obligation to assist with a "transition" to Atlas, and on that basis, it requests a declaration that it has no requirement to turn over documentation to Boeing.  There is no basis for the declaratory relief Evergreen seeks, and Count IV should therefore be dismissed.  Evergreen says that the contract does not speak to "transition."  That is irrelevant.  The LCF Contract provisions governing documents set forth Boeing's rights.  Under those provisions, Evergreen is obligated to provide Boeing with the "documents and data pertaining to Evergreen's operation, maintenance, and ground handling of the LCF program." Compl.  ¶ 79.  And the contract further anticipates that there will be operators other than Evergreen.

Indeed, an entire Article of Exhibit D to the LCF Contract is devoted to the "Return of Aircraft and Aircraft Documentation."  Ex. 2 [Ex. D to LCF Contract, § 17].  That Article governs return of aircraft and equipment, and requires Evergreen to provide Boeing a completed Technical Report, which is expansive in scope.  The contents to be included in the Technical Report are set forth in the attachments to Exhibit D, and include **ninety-three** specific items requiring information such as: "[a]ll historical records for Airframe and Engines," "Airframe and Engines current inspection status and operating times," "List and status of time and cycle controlled components." Ex. 2 [Ex. D to LCF Contract, Attachment 1F, Annex I to Re-Delivery Certificate ("Aircraft Documentation")].  That is in addition to "all updated logs, manuals, certificates and data, and inspection, modification and overhaul and repair records amended to their latest amendment revision pertaining to the Airframe, Engines or engines, components, assemblies, and appliances," which also must be delivered to Boeing.  Ex. 2 [Ex. D to LCF Contract, Attachment 1G, Schedule 2, § 3].  Evergreen must provide this information precisely to enable Boeing to have another operator "place the Aircraft on an FAA approved maintenance program." *Id.* § 7(f)(i).  Evergreen thus has no basis for a declaration or injunction that prohibits

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Boeing from requiring it to provide "documents and materials relating [to] the LCF program" as part of "transition efforts." Compl. Prayer for Relief, ¶¶ 14-15.

Nor is Evergreen entitled to a declaration or injunction that prohibits Boeing from obtaining "Evergreen's confidential, proprietary and/or trade secret information," *id.*, even assuming that any such information is implicated in Boeing's requests. Under the contract, Evergreen "shall provide any and all documentation, data, drawings, records and manuals" relating to the Dreamlifters to Boeing as part of returning the aircraft and documentation, "regardless [of] whether Operator [Evergreen] considers such information proprietary." Ex. 2 [Ex. D to LCF Contract, Attachment 1G, Schedule 2, § 7(f)(vi)]. As noted above, Boeing has "an irrevocable nonexclusive royalty-free license" to any such information. Ex. 3 [Ex. G to LCF Contract, § 20.2(e)]. Given Boeing's clear rights, Evergreen is not entitled to the relief sought as a matter of law and Count IV should be dismissed. *See Hearst*, 154 Wn.2d at 503-04, 115 P.3d at 267; *see also Steveson v. United Subcontractors, Inc.*, 2009 WL 4884497, at *1 (9th Cir. Dec. 11, 2009).

Finally, the Court may also exercise its discretion to dismiss a request for declaratory relief. *See, e.g., United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 919 (9th Cir. 1998). Where, as here, Evergreen has asserted only an amorphous claim that it is not required to participate in "transition activities," Compl. ¶¶ 81, 82, and has failed to identify what information Boeing has requested that Evergreen believes to be proprietary or a trade secret, Compl. ¶ 80, the declaratory action will not serve a useful purpose in clarifying the legal relations at issue. *See, e.g., Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). As such, the Court has the discretion to dismiss Count IV.

## CONCLUSION

For the foregoing reasons, the Court should grant Boeing's motion to dismiss.

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 24

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Dated:  April 26, 2010

PERKINS COIE LLP


By: *s/ Michael Himes*, WSBA No. 19423
   Michael Himes, WSBA No. 19423
   MHimes@perkinscoie.com
   Cori Gordon Moore, WSBA No. 28649
   CGMoore@perkinscoie.com
   **Perkins Coie LLP**
   1201 Third Ave., Suite 4800
   Seattle, WA  98101-3099
   Telephone:  206.359.8000
   Facsimile:  206.359.9000

KIRKLAND & ELLIS LLP

Craig S. Primis (pro hac vice pending)
John O'Quinn (pro hac vice pending)
Daniel Bress (pro hac vice pending)
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone:  202.879.5000
Facsimile:  202.879.5200

Attorneys for Defendant
THE BOEING COMPANY

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 25

03017-0606/LEGAL18173424.1

**CERTIFICATE OF SERVICE**

I certify that on April 26, 2010, I electronically filed the foregoing Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorney(s) of record:

Donald H. Mullins, WSBA #4966
4750 Columbia Center
701 Fifth Avenue
Seattle, Washington  98104

*Attorney for Evergreen International Airlines, Inc.*

C. Dana Hobart
Mary H. Chu
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017

*Attorneys for Evergreen International Airlines, Inc.*

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 26th day of April, 2010.

*s/ Michael Himes*
Michael Himes, WSBA No. 19423
**Perkins Coie LLP**
1201 Third Ave., Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
E-mail: MHimes@perkinscoie.com

*Attorneys for The Boeing Company*

MOTION TO DISMISS
(No. 2:10-CV-00568 (JCC)) – 26

03017-0606/LEGAL18173424.1